**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

NATIONAL CASUALTY COMPANY          *

          Plaintiff,          *

        v.          *          Civil Action No. AW-05-1992

LOCKHEED MARTIN CORPORATION,     *

        Defendant.          *

               * * * * *

## <u>MEMORANDUM OPINION</u>

National Casualty Company ("Plaintiff" or "National Casualty") brings this suit for declaratory judgment against Lockheed Martin Corporation ("Defendant" or "Lockheed Martin") to resolve a dispute concerning the scope of coverage of the insurance policy issued by Plaintiff for Defendant's vessel the M/V Sea Slice (the "Policy"). In particular, Plaintiff seeks a declaration from this Court that Defendant's claims for coverage under the insurance policy are time-barred. In the alternative, Plaintiff asserts that even if these claims are not time-barred, this Court should enter judgment limiting the amount Defendant may recover under the Policy to $718,945 and declare that the Policy does not cover Defendant's administrative expenses and legal fees. Currently pending before the Court are Defendant Lockheed Martin's Motion for Judgment on the Pleadings [4] and National Casualty's Motion to Strike Defendant's Demand for a Jury Trial [6]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions and has determined that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, the Court will grant in part and deny in part Defendant's Motion for Judgment on the Pleadings and grant Plaintiff's Motion to Strike Defendant's Demand for a Jury Trial.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to Plaintiff.  Plaintiff provided insurance coverage to Defendant for its vessel the M/V Sea Slice (the "Vessel") under Lockheed Martin's "Primary Marine Fleet Insurance Program."

The Policy contains two provisions regarding limitations on filing suit against National Casualty.  Under Clause 5 of the Policy's "General Conditions":

> [t]he Underwriters agree that any action or proceeding against them for the recovery of any claim under or by virtue of this policy shall not be barred if commenced within the time prescribed therefore in the statutes of the State of New York.

(The Policy, General Conditions ¶ 5).  The Policy sets forth a different statute of limitations in Clause 28, entitled "Suit Against Underwriters," which specifies:

> No action shall lie against Underwriters for the recovery of any loss sustained by the Assured unless such action is brought within one year after entry of any final judgment or decree in any litigation against the Assured, or in the event of a claim without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim, anything in this Policy, any law, ruling or statute of limitation to the contrary notwithstanding.

(The Policy, General Conditions ¶ 28).

Parties do not dispute that the Vessel sustained hull-and-machinery damage during a voyage from Hawaii to Alaska and that the Policy covered at least some of this damage.  On July 30, 2001, the fuel in the Vessel became contaminated due to an improperly sealed fuel line cap, which caused seawater to leak into the fuel tank.  The next day, the Vessel suffered a series of electrical, mechanical, and structural failures, which resulted in the engine room flooding.  The ship's operators decided to curtail the M/V Sea Slice's maiden voyage and arranged to have the ship towed back to

Hawaii for repairs on August 1, 2001.  While mechanics performed the initial repairs, the Vessel sustained more damage.  It was involved in an allision[1] with another docked vessel on August 4, 2001, and the Vessel collided with its tug on August 15, 2001.  The latter occurrence resulted in the engine room flooding yet again.

Defendant submitted an initial claim to Plaintiff for over $2 million for the damage to the Sea Slice.  On July 21, 2003, Plaintiff issued a check to Defendant for $666,319, which Plaintiff believed represented the reasonable repair costs less applicable deductibles.  Defendant, however, did not agree with Plaintiff's estimates of Defendant's losses and returned the check to Plaintiff uncashed.

Defendant then submitted a revised claim to Plaintiff on April 15, 2005 for $2,631,689.  Two months after Defendant submitted the revised claim, Defendant's counsel wrote to Plaintiff to confirm that the statute of limitations under New York law applied to suits concerning the Policy.  In response, Plaintiff filed suit in this Court on July 23, 2005, seeking a declaration that the one-year limitations period described in Clause 28, rather than the limitations period detailed in Clause 5 applied to this dispute.  Plaintiff's Amended Complaint identifies its claim as a non-jury admiralty claim, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure.[2]  On October 17, 2005,

---

[1]  Allision is a term used in maritime law, and Black's Law Dictionary defines an allision as "[t]he sudden impact of a vessel with a stationary object such as an anchored vessel or a pier." Black's Law Dictionary (7th ed. 1999).

[2]  Rule 9(h) provides that:
> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims.

Defendant filed a Motion for Judgment on the Pleadings and its Answer to the Amended Complaint, in which it set forth a counterclaim for breach of contract predicated on this Court's diversity jurisdiction. Defendant made a demand for a jury trial on its counterclaim. On October 31, 2005, Plaintiff filed a response to Defendant's Motion as well as a Motion to Strike Defendant's Demand for a Jury Trial.

## ANALYSIS

I.    Defendant's Motion for Judgment on the Pleadings

Defendant requests that this Court grant it judgment on the pleadings, pursuant to Rule 12(c). Rule 12(c) provides that after the pleadings are closed, a defendant may present a defense of failure to state a claim upon which relief may be granted by a judgment on the pleadings. *See* Fed. R. Civ. P. 12(c), (h)(2). A motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.,* 278 F.3d 401, 405-06 (4th Cir. 2002); *Fare Deals, Ltd. v. Glorioso,* 217 F. Supp. 2d 670, 671 (D. Md. 2002). For such a motion, the court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether to dismiss a complaint pursuant to Rule 12(c), this Court must view the well-pleaded material allegations in the light most favorable to the plaintiff and accept the factual allegations contained within the plaintiff's complaint as true. *See Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (*citing Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994)); *Chisolm v. TranSouth Finan. Corp.*, 95 F.3d

---

Fed. R. Civ. P. 9(h). In turn Rule 38(e) states that: "These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of 9(h)."

331, 334 (4th Cir. 1996).

The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1994); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Therefore, an action may be dismissed as a matter of law only if the complaint lacks a cognizable legal theory *or* if it alleges insufficient facts to support a cognizable legal theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)).

Defendant urges this Court to dismiss National Insurance's Amended Complaint because it argues that the limitations period in Clause 5, not Clause 28, applies to this action. In Clause 5, the parties agree that, in general, suits concerning the Policy must be brought within the limitations period set by New York law, which is six years for breach of contract actions. N.Y. C.P.L.R. § 213(2) (McKinney 2004). On the other hand, Clause 28 carves out an exception to this general rule and provides that certain suits must be brought within one year from the date the cause of action accrues.

To resolve this conflict, the Court must begin by looking to Maryland law.[3] Under Maryland

---

[3] When presented with choice-of-law questions, Maryland courts ordinarily follow the rule of *lex loci contractus,* which provides that the construction of a contract be determined by the law of the state where the contract was made. *Commercial Union Ins. v. Porter Hayden Co.*,

law, insurance policies are interpreted in the same manner as contracts generally; and Maryland law

does not adhere to the rule that an insurance policy should be construed most strongly against the

insurer.  *See Collier v. MD-Individual Practice Ass'n,* 607 A.2d 537, 539 (Md. 1992).  As with all

other contracts, a court must attempt to ascertain and give effect to the intentions of the parties at

the time of contracting.  *See Levy v. American Mut. Liab. Ins. Co.*, 73 A.2d 892, 894 (Md. 1995).

To determine the parties' intent, the court must view the instrument as a whole, attributing to each

word its normal or customary meaning, unless some indication exists that the parties intended to use

words in a special technical sense.  *See Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 771 (Md.

1996); *Sullins v. Allstate Ins. Co.,* 667 A.2d 617, 619 (Md. 1995); *Nolt v. United States Fidelity &

Guar. Co.,* 617 A.2d 578, 584 (Md. 1993); *Collier,* 607 A.2d at 539.  While the character of the

contract, its object and purposes, and the factual circumstances of the parties at the time of execution

may assist in interpreting the meaning of a particular contractual provision, clear and unambiguous

language must be enforced as written.  *See Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md.

2001); *Board of Trustees of State Colleges v. Sherman,* 373 A.2d 626, 629 (1977) ("where a contract

is plain and unambiguous, there is no room for construction").

   Plaintiff maintains that the Policy contains some ambiguity, asserting that the conditions of

Clause 5 conflict with those of Clause 28.  This Court, however, cannot agree.  Clause 5 sets the

statute of limitations for all actions to enforce the policy and states that: "The Underwriters agree

that any action or proceeding against them for the recovery of any claim under or by virtue of this

policy shall not be barred if commenced within the time prescribed therefore in the statutes of the

---

698 A.2d 1167, 1199 (Md. 1997); *Allstate Ins. Co. v. Hart,* 611 A.2d 100, 101 (Md. 1992).
Parties seem agree that the contract was made in Maryland, and that, therefore, Maryland law
governs the interpretation of the insurance policy's provisions.

State of New York."   In contrast, Clause 28 concerns a special subset of these actions and provides that:

> No action shall lie against Underwriters for the recovery of any loss sustained by the Assured unless such action is brought within one year after entry of any final judgment of decree *in any litigation against the Assured*, or in the event of a claim without the entry of such final judgment or decree, unless such action is brought within one year from the date of the payment of such claim, anything in this Policy, any law, ruling or statute of limitation to the contrary notwithstanding.

(Emphasis added).   The structure of this clause indicates that its provisions do not apply to any claim for loss, but only those claims related to "litigation against the Assured," or, in this case, litigation against Defendant.   Once this primary condition is met, then Clause 28 operates to bar a suit against Plaintiff brought either one year after the entry of final judgment against Defendant or one year after Defendant settles  or pays "such claim."   From this language, Clause 28 unambiguously applies to claims that concern injured parties who bring litigation against the parties.   The Clause does not apply to all losses that Defendant incurs for one of its insured vessels.

To interpret this provision as applying to all actions would render Clause 5 essentially meaningless.   As Plaintiff notes in its opposition, any construction of a contract that makes another provision superfluous is generally disfavored.   *See Baltimore Gas & Elec. Co v. Commercial Union Ins. Co.*, 688 A.2d 496, 503 (Md. 1996) ("A contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement.") (citing *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1033 (Md. 1993)); *see also* 11 Richard A. Lord, Williston on Contracts § 32:5 (4th ed. 1992) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable").   In this case, if the Court were to accept Plaintiff's reading, Clause 5 would become

surplusage.  According to Plaintiff, any time National Casualty paid or attempted to pay a claim, Defendant would have one year within which to challenge this payment. Yet, Clause 5 explicitly provides "that any action or proceeding against [either party] for the recovery of any claim under the [P]olicy shall not be barred if commenced within the time prescribed therefore in the statutes of the State of New York."

Furthermore, even under Plaintiff's interpretation of Clause 28, it does not follow that Defendant's claim is time-barred.  Assuming that "such claim" could refer to a claim by Defendant against Plaintiff for insured losses, Clause 28 still would not apply to this case because Plaintiff did not pay Defendant's claim.  Defendant made a claim for more than $2 million, and Plaintiff sent Defendant a check for a portion of that amount.  Defendant did not accept this check as payment, nor does this amount represent Defendant's entire "claim."  Because the parties did not agree to a settlement and because Plaintiff did not send the sum that Defendant sought, the amount sent to Defendant was not a payment of Defendant's "claim."  Therefore, even if Plaintiff is correct that Clause 28 applies to this type of case, the Court nevertheless finds that Defendant's claim is not time-barred by this clause as a matter of law.

II.     Plaintiff's Claim for Declaratory Judgment on the Scope and Amount of Reasonable Costs of Repairs

Plaintiff's Amended Complaint not only seeks a declaration regarding the limitations clauses, but also asserts that a controversy exists with respect to the scope of coverage and the cost of "reasonable" repairs to the Vessel.  Defendant's arguments in favor of dismissing the Amended Complaint and those against striking its demand for a jury trial rest on its general assertion that the Amended Complaint merely attempts to deny Defendant's right to try its claim for insured losses before a jury.  Yet, these arguments tend to conflate two conceptually distinct issues.  A judgment

on the pleadings against Plaintiff would preclude this Court or a jury from considering any of Plaintiff's remaining claims, but a judgment on Defendant's request for a jury trial would only determine whether a jury or a court should hear any part of the action.  Therefore, this Court will address the threshold question of whether to dismiss the balance of the Amended Complaint before analyzing Plaintiff's Motion to Strike Defendant's Demand for a Jury Trial.

Although this Court has granted judgment in favor of Defendant with respect to Plaintiff's first claim, it remains unpersuaded that the balance of the Amended Complaint should be dismissed in its entirety.  Plaintiff has averred that it disputes that the Policy's coverage extends to some of the repairs that Lockheed performed on the Vessel.  Such a dispute clearly qualifies as a case or controversy, and courts have entertained these types of actions, pursuant to their authority under the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200 (4th Cir. 2000) (reviewing action for declaratory judgment brought by insurer concerning extent of hull insurance coverage); *Home Insurance Co. v. Pan American Grain Mfg. Co.*, 397 F.3d 12 (1st Cir. 2005) (insurer brought declaratory judgment action regarding scope of coverage of marine insurance policy); *Acadia Ins. Co. v. Allied Marine Transport LLC*, 151 F. Supp. 2d 107 (D. Me. 2001) (same).

Defendant has argued that the Supreme Court case of *Beacon Theatres, Inc v. Westover*, 359 U.S. 500 (1959) supports its position that this Court should dismiss the remainder of the Amended Complaint.  In *Beacon Theatres*, the plaintiff sought declaratory relief against Beacon Theatres under the Sherman Antitrust Act and the Clayton Act.  *Id.* at 502.  Defendant Beacon Theatres demanded a jury trial of factual issues in the case, which the district court denied, reasoning that the factual disputes in the case were essentially equitable even though the defendant asserted a legal

counterclaim.  Reversing the Ninth Circuit, the Supreme Court granted Beacon Theatres' request for the issuance of a writ of mandamus, observing that the judge's determination of the common issues in trying the equitable claim, through collateral estoppel, might prevent a jury trial of defendant's counterclaim.  *Id.* at 505.  The Court held that in those circumstances neither statute nor the federal rules justified the deprivation of the defendant's right to a jury trial.  *Id.* at 508-509. Commentators and courts have cited this case in support of the proposition that a court may not try equitable issues of a case so as to infringe on a party's federal constitutional right to a jury trial. This case, however, does not hold that a court must dismiss an action for declaratory judgment brought pursuant to the district court's admiralty jurisdiction.

Nor does the other Supreme Court decision upon which Defendant relies, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), have any bearing on the issues in this case.  *Wilton* concerned the standard of review for a district court's decision to stay a declaratory judgment action during the pendency of parallel state court proceedings.  *Id.* at 279.  Since no parallel state court proceedings are pending, this case is inapposite.  In sum, as the Amended Complaint sets forth a valid claim, pled with sufficient particularity to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, the Court will not exercise its discretion to dismiss the entire action.

III.    Defendant's Right to A Jury Trial

The final motion before the Court, Plaintiff's Motion to Strike Defendant's Demand for a Jury Trial, raises a question that courts have struggled to resolve since the unification of admiralty and general civil procedure in 1966.  When an admiralty plaintiff's right to a non-jury trial in an admiralty suit conflicts with a defendant's desire to have its legal counterclaims tried before a jury, which interest should yield?

In most civil cases, the Seventh Amendment guarantees either party the right to have a jury try issues of fact.[4]  The Seventh Amendment, however, does not require a jury trial in a case based on claims in admiralty, and such claims ordinarily are tried to the court.  *Fitzgerald v. United States Lines,* 374 U.S. 16, 20 (1963).  Where a plaintiff has a cognizable claim under both admiralty and general federal jurisdiction, he may bring the action under the court's general jurisdiction or avail himself of admiralty procedures and remedies by designating his claim as one within the court's admiralty jurisdiction under Rule 9(h).[5]  If the plaintiff chooses to proceed under the court's general civil jurisdiction, the right to trial by jury attaches.  *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 359-60 (1962).  Whereas if the plaintiff invokes Rule 9(h), he has the right to a bench trial.

While some courts have ruled that a plaintiff's decision to proceed under a federal court's admiralty jurisdiction prevents a defendant from seeking a jury trial on its counterclaims, others have held that the defendant has a right to a jury trial notwithstanding plaintiff's election to invoke the

---

[4]  The Seventh Amendment provides that:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. Amend. VII.

[5]  The provision referred to as the "Savings to Suitors" clause permits a plaintiff to bring an admiralty suit under the federal court's general jurisdiction where a source of law other than maritime law would afford the plaintiff an alternate remedy.  *See* 28 U.S.C. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled").

court's admiralty jurisdiction. *Compare Windsor Mount Joy Mutual Ins. Co. v. Johnson*, 264 F.

Supp. 158, 162 (D.N.J. 2003) (noting that plaintiff's decision to proceed under admiralty jurisdiction

cannot be "undone" through the assertion of a counterclaim that is subject to the court's diversity

jurisdiction); *St. Paul Fire & Marin Ins. Co. v. Holiday Fair*, 1996 WL 148350, at *2 (S.D.N.Y.

Apr. 2, 1996) (same); *Royal Ins. Co. of America v. Hansen*, 125 F.R.D. 5 (D. Mass. 1988) (same);

*Camrex (Holdings) Ltd. v. Camrex Reliance Paint Co.*, 90 F.R.D. 313, 317 (E.D.N.Y. 1981)

(holding a "plaintiff's election to sue on an admiralty or maritime claim as the basis for federal

jurisdiction binds the parties in the lawsuit to the inevitable procedural consequence of a court trial

. . . even where a 'legal' counterclaim has been interposed."); *Arkwright-Boston Manufacturers Mut.*

*Ins. Co. v. Baurer Dredging Co.,* 74 F.R.D. 461 (S.D. Tex. 1977) (same) *with Wilmington Trust v.*

*United States District Court for the District of Hawaii*, 934 F.2d 1026 (9th Cir. 1991) (ruling that

when weighing a defendant's right to have his counterclaim tried before a jury under the Seventh

Amendment and plaintiff's right to have a non-jury trial under maritime law, the defendant's

Seventh Amendment right is paramount) *cert. denied*, 503 U.S. 966 (1992); *Koch Fuels, Inc. v.*

*Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1041 (8th Cir. 1983) (holding that trial court

did not abuse its discretion by severing defendant's counterclaim from admiralty action and allowing

counterclaim to be tried before a jury); *Sphere Drake Ins. PLC v. J. Shree Corp.*, 184 F.R.D. 258

(S.D.N.Y. 1999) (citing *Wilmington Trust* and ruling that a defendant had the right to have its

counterclaim tried by a jury even though plaintiff identified the action as arising under admiralty

law); *see also Harrison v. Flota Mercante Grancolombiana, S.A.*, 577 F.2d 968 (5th Cir. 1978)

(concluding that a plaintiff's choice to proceed before the court under Rule 9(h) precluded a third-

party defendant from invoking the right to a jury trial of its fourth-party complaint).  A minority of

jurisdictions have embraced the latter view, with the majority concluding that an admiralty plaintiff's right to a bench trial "trumps" the defendant's right to a jury trial of its counterclaim.

The case of *Windsor Mount Joy Mutual Insurance Company v. Johnson* illustrates the reasoning of the majority of courts confronting this issue. In that case, the plaintiff Windsor Mount Joy Mutual Insurance Company, invoking the admiralty jurisdiction of the court, sought declaratory judgment that it need not provide coverage under its policy with the defendant for the theft of an insured power-boat. *Windsor Mount*, 264 F. Supp. 2d at 159. The defendant answered the plaintiff's complaint and also asserted counterclaims against the plaintiff for breach of contract, indemnification, and breach of covenant of good faith and dealing. *Id.* at 160. The defendant's pleadings also included a demand for a jury trial. *Id.* After reviewing the relevant caselaw and noting the split in authority, the District Court for the District of New Jersey granted the plaintiff's motion to strike. Although the *Windsor Mount* court observed that the Defendant would be entitled to a jury trial if he had brought an action before the plaintiff and demanded a jury trial, the court found that denial of plaintiff's motion to strike would "emasculate the election given to [the plaintiff] by Rule 9(h)." *Id.* at 163-64 (quoting *Harrison*, 577 F.2d at 987). This Court remains mindful of the consequences of curtailing a party's Seventh Amendment rights. Yet, permitting a defendant to have a jury trial on its counterclaim would vitiate a plaintiff's decision to bring a suit under Rule 9(h). This conclusion is consistent with that expressed by the Advisory Committee in their notes on the 1966 amendments to the Federal Rules of Civil Procedure:

> Many claims, however, are cognizable by the district courts whether asserted in admiralty or in a civil action, assuming the existence of a nonmaritime ground of jurisdiction. Thus at present the pleader has power to determine procedural consequences by the way in which he exercises the classic privilege given by the saving-to-suitors clause (28 U.S.C. § 1333) or by equivalent statutory provisions. . . One of

13

> the important procedural consequences is that in the civil action
> either party may demand a jury trial, while in the suit in admiralty
> there is no right to jury trial except as provided by statute.  It is no
> part of the purpose of unification to inject a right to jury trial into
> those admiralty cases in which that right is not provided by statute.
> . . . Other methods of solving the problem were carefully explored,
> but the Advisory Committee concluded that the preferable solution
> is to allow the pleader who now has power to determine procedural
> consequences by filing a suit in admiralty to exercise that power
> under unification, for the limited instances in which procedural
> differences will remain, by a simple statement in his pleading to the
> effect that the claim is an admiralty or maritime claim.

39 F.R.D. 69, 75-76 (1966).

Defendant relies on *Beacon* in support of its assertion that the Seventh Amendment protects its right to a jury trial on its counterclaim.  The majority line of cases, decided well after *Beacon Theatres,* does not apply this decision in the admiralty context.  *Beacon Theatres* examined the applicability of the Seventh Amendment when a court must decide both equitable and legal issues and held that neither statute nor the federal rules justified infringing on the defendant's Seventh Amendment rights.  In an admiralty case, however, the Federal Rules expressly recognize that plaintiffs may elect under Rule 9(h) to have their cases tried before a judge.  Furthermore, nearly half a century has passed since the Supreme Court handed down *Beacon Theatres.*  If *Beacon Theatres* applied to admiralty suits, the Court's silence on this question appears inexplicable, especially in light of the numerous decisions that have held to the contrary.  In these circumstances, this Court cannot adopt the position argued by Defendant that it has a right to a jury trial of its counterclaim.

Moreover, though Defendant's counterclaims can be characterized as compulsory, they concern the same legal issues as Plaintiff's Amended Complaint.  Plaintiff seeks a declaration as to the scope of coverage of the Policy, and Defendant's counterclaim alleges that the claims it

submitted to Plaintiff are covered by the Policy.  That these counterclaims are intertwined with Plaintiffs's action militates in favor of striking Defendant's jury demand.  *Cf.  Royal Ins. Co.*, 125 F.R.D. at 9.  To hold otherwise would enable any defendant to negate a plaintiff's election under 9(h) by asserting a counterclaim that merely represents the "flip-side" of the plaintiff's claim.  Both *Wilmington Trust* and *Drake* involved counterclaims that raised issues apart from those pled in the complaints.  For this and the reasons previously discussed, this Court will grant Plaintiff's Motion to strike, so as to give meaning to a plaintiff's right to a non-jury trial under Rule 9(h).

## <u>CONCLUSION</u>

Therefore, this Court will GRANT *in part* and DENY *in part* Defendant's Motion for Judgment on the Pleadings.  The Court will also GRANT Plaintiff's Motion to Strike Defendant's Demand for a Jury Trial.  An Order consistent with this Opinion will follow.


Date:   <u>February 17, 2006</u>                    <u>                /s/                </u>
                                         Alexander Williams, Jr.
                                         United States District Court