**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

|                                          |   |                              |
|------------------------------------------|---|------------------------------|
| NATIONAL CASUALTY COMPANY,               | * |                              |
|                                          | * |                              |
| Plaintiff,                               | * |                              |
|                                          | * |                              |
| v.                                       | * | Civil Action No. AW-05-1992  |
|                                          | * |                              |
| LOCKHEED MARTIN CORPORATION,             | * |                              |
|                                          | * |                              |
| Defendant.                               | * |                              |

**************************************************************************

<u>**MEMORANDUM OPINION**</u>

Plaintiff National Casualty Company ("National Casualty") brought this action against Defendant Lockheed Martin Corporation ("Lockheed") for a declaratory judgment regarding the parties' rights and obligations under a marine package policy ("the Policy").  Defendant filed a counter-claim against Plaintiff for compensatory damages, interest, and reasonable attorney's fees.  Currently pending before the Court are National Casualty Company's Motion for Reconsideration or Clarification (Docket No. 108) and Lockheed Martin Corporation's Motion to Reconsider and/or Clarify the Grant of Partial Summary Judgment to Plaintiff and to Deny Partial Summary Judgment to Defendant on General Condition 17 of the Policy (Docket No. 109). The Court has reviewed the record and the parties' filings with respect to the instant motions.  The issues have been fully briefed, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, the Court will: (1) GRANT IN PART AND DENY IN PART Plaintiff's Motion for Reconsideration or Clarification and (2) DENY Defendant's Motion to Reconsider and/or Clarify the Grant of Partial Summary Judgment to Plaintiff and to Deny Partial Summary Judgment to Defendant on General Condition 17 of the Policy.

1

**1.  Procedural Background**

On July 22, 2005, National Casualty filed a Complaint (Docket No. 1) against Lockheed seeking a declaratory judgment, and amended that Complaint on September 23, 2005 (Docket No. 3).  Lockheed filed an answer and counter-claim for damages, interest, and attorney's fees on October 17, 2005.  On February 10, 2009, National Casualty filed a Motion for Partial Summary Judgment seeking a finding that legal fees and administrative costs are not within the scope of the Policy under General Conditions 2 and 17. On March 13, 2009, Lockheed filed a Cross Motion for Summary Judgment seeking (1) denial of National Casualty's Motion, and (2) dismissal of National Casualty's affirmative defense that Lockheed had failed to exercise due diligence; (3) a finding that the fuel cap failure and the engine room flooding are one occurrence under the Policy and thus subject to one deductible; (4) a finding that National Casualty is bound by the agreement of its surveyor as to the repairs that were the owner's work and those that related to tug damage; and (5) a finding that the minimum recovery to which Lockheed is entitled is $718,945. On September 9, 2009, the Court granted in part and denied in part both parties' motions, finding that (1) Lockheed's legal fees and administrative costs are within the scope of the Policy under General Condition 2, but not within the scope of General Condition 17; (2) dismissing National Casualty's affirmative defense that Lockheed had failed to exercise due diligence; (3) finding that whether the fuel cap failure and the engine room flooding are one occurrence under the Policy and thus subject to one deductible is an issue for the jury; (4) finding that Lockheed and National Casualty are free to litigate the issue of what was or was not the owner's work, and finding National Casualty was estopped from attributing more repair costs to the tug accident; and (5) finding that the minimum recovery to which Lockheed is entitled is $718,945. Pursuant to Federal Rule of Civil Procedure 54(b), both parties now seek

reconsideration of the September 8, 2009, ruling. A detailed statement of facts can be found in the opinion of September 8, 2009.

## 2.  Standard of Review

### a.  Reconsideration or Clarification

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure "[a]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time." Fed. R. Civ. P. 54(b). Consequently, "[m]otions for reconsideration of orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment, but instead, are committed to the discretion of the district court." *Robinson v. Fountainhead Title Group Corp.*, No. 03-3106, 2009 U.S. Dist. LEXIS 22476, at *3-4 (D. Md. Mar. 3, 2009) (quotations omitted). Thus, whereas reconsiderations of final judgments are appropriate only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice," *Hutchinson v. Stanton*, 994 F.2d 1076, 1081 (4th Cir. 2002), reconsiderations of interlocutory orders can be based on many other rationales. These rationales include those listed above, and the rationale of accommodating judicial "mistake, inadvertence, surprise or excusable neglect; or any other reason justifying relief from the operation of the judgment." *Robinson*, 2009 LEXIS 22476, at *4 (quotations omitted).

A motion to reconsider is appropriate for various reasons, including when, "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. . . . Such problems rarely arise and the motion to reconsider should be equally rare." *Above the Belt, Inc. v.*

*Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983).

### 3.  Analysis

Both parties seek reconsideration of parts of the Court's Opinion on the Motions for
Summary Judgment of September 8, 2009, on the grounds that the Court made clear errors of
law or did not properly specify its opinion. National Casualty seeks reconsideration of the
Court's decision that General Condition 2 covers Lockheed's attorneys' fees and administrative
expenses and that Lockheed established due diligence as a matter of law, and alternatively
requests that the Court clarify whether it decided that coverage has been conclusively
established. Lockheed seeks reconsideration of the Court's decision that General Condition 17
only applies to fees and expenses incurred by National Casualty, and alternatively requests
clarification on whether Lockheed may recover legal expenses it incurred in pursuing
reimbursement from the tug companies for the tug incidents of August 4, 2001, and 14, 2001,
which it claims National Casualty should have incurred. The Court now concludes that National
Casualty presented sufficient evidence that Lockheed failed to exercise due diligence to survive
summary judgment on this issue. The Court does not alter its decision on any other issue, but
does further clarify its previous decisions on these issues in this Opinion.

### a.  General Condition 2

In its September 8, 2009, ruling, the Court held that General Condition 2 of the Policy
("Condition 2") covers Lockheed Martin's attorneys' fees and administrative expenses
associated with its first-party property damage claim against National Casualty because the
contract language unambiguously guarantees coverage for any costs the assured incurs in
defending and investigating a claim. The Court noted that this was not a form policy, but rather,
a manuscript policy that National Casualty could have easily changed to specify non-coverage.

In its Motion for Reconsideration, National Casualty contends the Court erred as a matter of law in finding that Condition 2 of the Policy covers Lockheed Martin's attorneys' fees and administrative expenses associated with its first-party property damage claim against National Casualty, arguing that the clause solely pertains to charges or expenses incurred in defending against third-party liability claims. National Casualty presents no new information in this argument, but rather simply reasserts its old argument that Condition 2 only applied to third party liability claims, and presents no new information. The Court is unconvinced by National Casualty's reassertions, and determines the rationale for its decision set forth in the Court's September 8, 2009, Memorandum Opinion (Docket No. 107) is accurate. For this reason, the Court denies National Casualty's Motion for the Court to Reconsider its interpretation of General Condition 2 coverage.

### b.  Due Diligence

In its September 8, 2009, Opinion, citing *Saskatchewan Government Insurance Office v. Spot Pack, Inc.*, 242 F.2d 385 (5th Cir. 1957), this Court held "the burden of proving a failure to exercise due diligence with respect to marine insurance policy appears to be on the insurance company," and the insurance company must show the insured had knowledge of an unseaworthy condition. (Docket No. 106.) This Court held that National Casualty failed to make this demonstration of Lockheed's lack of due diligence, because National Casualty made a binding admission waiving the affirmative defense of lack of due diligence. Dispositive of this decision was the fact that the Court construed a July 21, 2003, letter from National Casualty's counsel as a binding judicial admission. The letter stated, "from our investigation, Lockheed Martin appears to have exercised the requisite due diligence to avoid this flooding loss, including by carrying out repairs of the prior hull cracking…unless contrary information is later obtained or provided, the

due diligence proviso to coverage appears to be met." (Docket No. 91.) The Court now reverses

its decision on whether National Casualty has presented sufficient evidence to survive summary

judgment on its affirmative defense of lack of due diligence.

In its Motion for Reconsideration, National Casualty contends the Court made a clear

error of law by determining National Casualty had waived the due diligence defense. First,

National Casualty argues that the Court applied the wrong standard in ruling on due diligence

because the Court cited the Fifth Circuit standard that the insurer bears the burden of showing the

insured failed to exercise due diligence, instead of the applicable Fourth Circuit standard

elaborated in *Goodman v. Fireman's Fund Ins. Co.*, 452 F. Supp. 8 (D. Md. 1977), that a

defendant can establish an affirmative defense of lack of due diligence by demonstrating that the

owner was negligent. Lockheed counters that National Casualty has misunderstood *Goodman*,

and that the Fourth Circuit stated that a showing of negligence alone does not amount to a

showing of a lack of due diligence. *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1042

(4th Cir. 1979).

The Court affirms its earlier opinion regarding the proper standard for evaluating due

diligence. In *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1042 (4th Cir. 1979), the

most recent case from the Fourth Circuit dealing specifically with a due diligence defense in

maritime insurance policy coverage, the Fourth Circuit explained, "all risks policies have been

construed as covering all losses that are 'fortuitous.'. . . . [L]oss due to the negligence of the

insured or his agents has generally been held to be fortuitous and absent express exclusion, is

covered by an all risks policy." *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1042 (4th

Cir. 1979). The district court in *Goodman* held, and the Fourth Circuit affirmed, that policies that

insure against negligence but not "lack of due diligence" are interpreted "to insure against

seagoing or operational negligence of the master (whether or not he is the owner) and to exclude from coverage damage due to all the shoreside failure of the [insured] owner or his managerial staff properly to prepare or equip the vessel for the voyage or service she is about to perform." *Goodman*, 452 F. Supp. at 11. This Court's interpretation is consistent with how other courts have interpreted the *Goodman* decision. *See, e.g.*, *Johnson & Towers Baltimore, Inc. v. Vessel "Hunter"*, 802 F. Supp. 1343, 1351 (D. Md. 1992) (finding an all-risk insurance policy, with an exclusion for lack of diligence, covered work of negligent repairmen because "abuse of the insulation was an accidental consequence of the repairs they made to the engines. . . . there is no evidence of intentional abuse to the lagging and insulation"); *Insurance Co. of North America v. United States Gypsum Co.*, 678 F. Supp. 138, 142 (W.D. Va. 1988) (citing *Goodman* for the proposition that "where the insured or its agent was negligent, this has been deemed to be fortuitous [and thus covered] unless there was an express exclusion in an all-risk policy.");. While National Casualty is correct to note that other circuits have decided differently on this issue, this Court declines to stray from the law in this Circuit. *See, e.g.*, *L & L Marine Service, Inc. v. Insurance Co. of North America*, 796 F.2d 1032, 1037 (8th Cir. 1986) ("[U]nder [English maritime law], the insurer can deny recovery in a time policy only if the vessel is sent to sea in an unseaworthy state 'with the privity [knowledge] of the assured.' However, . . . we conclude that the district court did not err in instructing the jury that a vessel owner who acts negligently fails to exercise due diligence.").

The Court believes questions of fact remain as to whether Lockheed exercised due diligence in sending out the ship on the day of the accident. As the Court previously explained, evidence in the record demonstrates that a ballasting problem, caused by the negligence of a crew member, caused the damage to the ship, and was thus covered under the Liner Negligence

Clause. But, the Court has reconsidered the parties' arguments and believes that disputes of material fact remain regarding whether the insured had knowledge of the Sea Slice's unseaworthy condition prior to the accident. National Casualty interviewed Lockheed's naval architect, Geoff Wilkie, who testified that though Lockheed management overruled him, he opposed the voyage from Hawaii to Alaska. Additionally, Lockheed's vessel designer and mechanical engineer responsible for the voyage testified they did not want the vessel to undertake the voyage in sea state 5 or high sea state 5. Upon a second review, and construing the facts in the light most favorable to National Casualty, the nonmoving party on this issue, the Court concludes these facts as to whether the vessel was unseaworthy and whether Lockheed knew the vessel was unseaworthy when it approved its voyage are disputes of material fact.

The Court also reverses its previous position on the issue of whether National Casualty made a binding judicial admission that Lockheed exercised due diligence. The Court now holds that the July 21, 2003, letter does not contain a binding judicial admission, as the statement was qualified on the condition that National Casualty's counsel not find additional relevant information, and thus did not meet the requirements of a binding judicial admission. Judicial admissions "include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 265 (4th Cir. 2004). National Casualty claims it made only "qualified statements such as 'probably,'" which "do not constitute binding judicial admissions," and stated that its opinion could change upon discovery of additional information. (Docket No. 108). The Court agrees that because National Casualty's counsel's statement was qualified, it does not constitute a judicial admission.  Furthermore, National Casualty argues that in fact, Lockheed never understood the letter to waive the defense of due diligence. Lockheed contests

this fact, claiming that it did understand the letter to waive this defense, but had no reason to raise the issue until the start of this case. The issue that is dispositive in determining whether a party has made a binding judicial admission is whether the admitting party considered it a waiver, not whether the other party considered it a waiver, thus the Court does not believe this argument is relevant. In any case, it appears that the information National Casualty obtained after sending the letter could be sufficient to alter the statement's status as a judicial admission. Amongst the information National Casualty gathered was testimony from naval architect Geoff Wilkie that he had informed Lockheed management he did not think the voyage should occur.

The Court concludes that National Casualty has made the necessary showing of a dispute of material fact to preclude partial summary judgment on its affirmative defense of Lockheed's lack of due diligence. National Casualty moves in the alternative for the Court to clarify whether coverage has been conclusively established, but because the Court has decided to deny summary judgment on the issue of due diligence, the Court need not address the alternative argument.

### c.  General Condition 17

In its September 8, 2009, Opinion, the Court held that General Condition 17 was ambiguous. The Court construed Condition 17 to apply only to fees and expenses incurred by National Casualty because some of the language would be meaningless if the policy covered the insured. Second, because many of the activities listed in the relevant clause are associated with the insurer, it would not make sense for National Casualty to be liable for all of Lockheed's expenses as Lockheed's reading would require. Finally, Lockheed's insurance broker drafted the language. In seeking reconsideration or clarification, Lockheed argues that the Court should allow, or clarify its allowance of, Lockheed's recovery of legal expenses that should have been incurred by National Casualty under General Condition 17. Lockheed contends that the expenses

Lockheed incurred in the action against the tug companies for the tug incidents of August 4 and 14, 2001, should have been incurred by Lockheed, and that the Court did not specify whether General Condition 17 allowed Lockheed to recover such costs. Lockheed seeks reconsideration or clarification on the distinct point of whether it can recover under General Condition 17 for expenses that National Casualty should have incurred. Lockheed also contends that National Casualty's expert on insurance issue, Ken Draper, testified that under General Condition 17 National Casualty would bear the legal fees and expenses associated with pursuing the claim against the tug company whether National Casualty pursued the claim or Lockheed pursued the claim.

National Casualty responds that General Condition 17 does not require National Casualty to cover legal fees or expenses associated with the pursuit of an insured's claims below a $100,000 deductible per claim. Both of the tug damages were below this $100,000 deductible rate, according to National Casualty. Apparently, in a letter dated February 5, 2003, counsel for Lockheed admitted the damage from the August 4, 2001, tug incident was $57,873.66 in repair costs, and the damage from the August 14, 2001, tug accident cost $93,057.00. In an April 15, 2005, letter, counsel for Lockheed Martin wrote it was "no longer seeking reimbursement from underwriters for those two incidents" as it had recovered from the tugs for those incidents. Furthermore, National Casualty explains, it has no subrogation rights against the tugs, as it never made any payment to Lockheed on those claims as they both fell below the deductible. National Casualty contends there is no basis for the argument that it should have incurred the costs of pursuing Lockheed's deductible.

Lockheed has not presented sufficient information to allow the Court to conclude that the Court's previous Opinion was an error of law, or otherwise inaccurate, and National Casualty has

presented ample information showing the Court's Opinion was correct. As such, the Court will deny Lockheed's Motion for the Court to reconsider. General Condition 17 does not allow Lockheed to recover expenses for legal fees it accrued in pursuing claims that fell below its deductible.

### 4.   Conclusion

For the foregoing reasons, the Court will (1) GRANT IN PART and DENY IN PART Plaintiff's Motion for Reconsideration or Clarification and (2) DENY Defendant's Motion to Reconsider and/or Clarify the Grant of Partial Summary Judgment to Plaintiff and to Deny Partial Summary Judgment to Defendant on General Condition 17 of the Policy. A separate Order will follow.

April 12, 2010                                          /s/
                                                Alexander Williams, Jr.
                                                United States District Judge