**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| | * | |
| NATIONAL CASUALTY COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-05-1992 |
| | * | |
| LOCKHEED MARTIN CORPORATION, | * | |
| | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>Memorandum Opinion</u>

Several days ago, the Court conducted a hearing on eight pending motions: (1) motion *in limine* to exclude evidence of undisclosed attorneys' fees, Doc. No. 142, (2) motion *in limine* to exclude evidence of crew ballasting, Doc. No. 143, (3) motion *in limine* respecting issues already decided by the Court, Doc. No. 144, (4) motion *in limine* to preclude Plaintiff from offering evidence regarding pre-accident cracking of vessel frames, Doc. No. 145, (5) motion *in limine* to exclude evidence of litigation-related attorneys' fees, Doc. No. 146, (6) motion *in limine* to preclude Plaintiff from offering deposition designations of Geoff Wilkie, Doc. No. 147, (7) motion *in limine* to preclude Plaintiff from offering any expert opinion or testimony of Frederick "Kip" Hamilton, Doc. No. 148, and (8) motion *in limine* to preclude Plaintiff from offering any expert opinion or testimony regarding due diligence and to otherwise limit expert opinion and testimony, Doc. No. 149. Most of the issues presented in these motions were resolved at the hearing, but not all. The Court will now memorialize the rulings that it made at the hearing and address the remaining issues.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Due to the large number of motions and the narrowness of the factual issues relating to each motion, this section will only discuss the general facts and contentions of the Parties, reserving the specifics that relate to each motion for later. The Pretrial Order submitted by the Parties contains a more complete statement of the pertinent facts. *See* Doc. No. 160.

The M/V SEA SLICE ("SLICE") is an experimental ship designed by Lockheed Martin ("Lockheed") to model a new type of hull technology. This case arises out of a 13-day demonstration cruise that Lockheed had planned for the SLICE, beginning in Hawaii and ending in Alaska. At the time of the voyage, the SLICE was insured by National Casualty Company ("NCC"). Lockheed's insurance policy covered all damage to the vessel's hull and machinery, as long as the damage did not result from Lockheed's lack of due diligence.

During the trip, the SLICE was damaged by flooding, cracking of the hull, and fuel contamination. The SLICE was towed back to Hawaii for repairs, where it was damaged by two additional incidents: contact with another docked vessel and a collision with a tug boat.

Lockheed seeks to recover $5,953,282.72, consisting of alleged repair costs, towing, survey / investigation costs, and attorneys' fees. Several of the crucial disputes issues are: (1) whether Lockheed failed to exercise due diligence when it sent the SLICE on the Hawaii-Alaska cruise, (2) whether the various incidents that damaged the vessel constitute a single, related series of occurrences, subject to a single deductible, or separate incidents subject to multiple deductibles, (3) whether the repair costs submitted by Lockheed are accurate, and (4) the extent to which Lockheed can recover its attorneys' fees.

## II.   ANALYSIS

### A.   Motion *in limine* to exclude evidence of undisclosed attorneys' fees, Doc. No. 142

For the reasons stated on the record at the hearing, this motion is denied.

### B.   Motion *in limine* to exclude evidence of crew ballasting, Doc. No. 143

This motion presents NCC's objections to a number of different witnesses and documents claiming that ballast water was added to the SLICE soon after its departure from Hawaii. This evidence is part of Lockheed's strategy for defeating NCC's due diligence defense, because it tends to show that the ultimate causes of damage to the SLICE originated after its inspection by Lockheed's engineers.

For the reasons stated at the hearing, the Court began by reaffirming the general principle that, even though crew ballasting is relevant to NCC's due diligence defense, Lockheed may not present hearsay evidence on the subject. However, depending on what evidence NCC chooses to present at trial, the Court leaves open the possibility that Lockheed may present such evidence as impeachment.

The Court then analyzed the admissibility of each segment of testimony and documentary evidence analyzed by the Parties. First, the Court addressed the deposition of Arthur Tougas. The Court held that the evidence was inadmissible hearsay. However, Lockheed pointed out that it had not designated the testimony for use at trial, rendering this issue moot.

Second, the Court addressed the alleged hearsay statements of Jon Wing and the Statement of Allegation that he authored. Defendant claims that the Statement of Allegation is a joint exhibit, and that NCC had agreed in a recent e-mail to the full admissibility of joint exhibits. NCC counters that it has not agreed to the admissibility of otherwise inadmissible segments of the joint exhibits. The Court requested that the Parties provide the Court with a copy of any relevant e-mails.

The Court has reviewed the e-mail exchange and finds that NCC only agreed to the general admissibility of the exhibits. It may still object that certain statements within those exhibits are inadmissible and in need of redaction. Because the admissibility of the alleged hearsay statements within the report may depend upon the way NCC uses the report during trial, the Court will defer making a decision on their admissibility until the appropriate time.

Third, the Court discussed the testimony of Steve Schmitz. The Court held that the statement of Fikes, as reported by Schmitz, does not fall within the statement-against-interest exception to the hearsay prohibition. However, Defendant also argued at the hearing that Schmitz's testimony is based on personal knowledge arising from his own investigation, and that he authored reports that will be admissible at trial. The Court reserved decision on this issue until trial.

Fourth, the Court held that the deposition testimony of Fred Lewis on the issue of crew ballasting is hearsay. Again, Defendant stated that Lewis would not be testifying on crew ballasting. Thus, the dispute is moot.

Fifth, the Court analyzed a Memorandum to File written by Edward Thiemann. Defendant argues that statements contained in the Memorandum, in which Thiemann states that

the captain of the SLICE acknowledged that the crew added ballast water to the vessel, are admissible because they are contained in the records of NCC's agent, and because NCC intends to use other parts of the exhibit on the issue of liability at trial. NCC counters that its use of the document does not open the door to the admission of its hearsay contents, and that hearsay segments should be redacted. The Court will again reserve judgment until trial, both because this issue was under-developed in the briefings submitted by the Parties, and because the admissibility of the alleged hearsay statements may depend on the use NCC makes of the rest of the document at trial.

Sixth, the Parties dispute whether Lockheed's Casualty Report falls within the business record exception to the hearsay rule. The Court determined that it would be inappropriate to resolve the disputed facts regarding whether Lockheed keeps records of this sort in the ordinary course of its business without hearing the relevant witnesses lay the evidentiary foundation. Thus, the Court will defer ruling on this issue until it hears the foundational testimony.

The overall outcome of the Court's rulings is that NCC's motion is granted in part and taken under advisement in part.

**C.**    **Motion *in limine* respecting issues already decided by the Court, Doc. No. 144**

For the reasons stated at the hearing, this motion is granted in part and denied in part, with the following results. First, Lockheed will be permitted to refer to the time-bar defense raised in NCC's original complaint, but only as it relates to the reasonableness of attorneys' fees. Lockheed will not be permitted to present such evidence for the purpose of drawing the inference that, because NCC's past defenses had no merit, their current defense has no merit either. The

Court will supervise the manner in which Lockheed elicits testimony on this subject in order to ensure that this line is respected. Second, the Court held that the qualified admissions of NCC Counsel regarding Lockheed's due diligence are admissible.

**D.**    **Motion *in limine* to preclude Plaintiff from offering evidence regarding pre-accident cracking of vessel frames, Doc. No. 145**

During the hearing, the Court indicated its inclination to admit evidence of pre-accident cracking of vessel frames, but it ultimately took the matter under advisement in order to consider it further. The Court now holds that the evidence is admissible on the issue of due diligence, because it arguably suggests a history of problems with the SLICE, and NCC may be able to show that this history is relevant to Lockheed's diligence in sending such a vessel out to sea.

Lockheed's central argument is that the evidence is inadmissible on the issue of damages. Lockheed presents two arguments: (1) it is uncontested that all repairs of prior cracks were complete before the ship departed for Alaska, and (2) the Liner Negligence Clause covers not only damage that originates mid-voyage, but also latent defects.

The Parties' contentions seem to be, as it were, two ships passing in the night. NCC analyzes the admissibility of the evidence on the issue of liability, whereas Lockheed focuses on the inadmissibility of cracking evidence on the issue of damages. The Court agrees with both Parties' arguments. Accordingly, the motion will be granted in part and denied in part: NCC may present evidence of pre-accident cracking as it relates to liability (*i.e.*, on its due diligence defense), but not regarding damages.

**E.     Motion *in limine* to exclude evidence of litigation-related attorneys' fees, Doc. No. 146**

The Court reserved judgment on this motion. The premise of NCC's motion is that the Court's prior opinions left open the question of whether Lockheed may recover its litigation-related attorneys' fees under General Condition 2(a) of the insurance policy. General Condition 2(a) permits Lockheed to recover "[c]osts, charges, and expenses reasonably incurred by the Assured in defense and/or investigation of any claim coming within the scope of this policy." NCC does not ask the Court to reconsider its prior opinions, but rather seeks to distinguish them.

The Court now holds that its prior opinions directly resolve the issues raised by NCC. NCC's motion for partial summary judgment stated that "Lockheed Martin is claiming all of its legal fees incurred both before the lawsuit and during this lawsuit . . . [under] Clause 2(a)," and argued that Lockheed's claim for such fees should be rejected as a matter of law. Doc. No. 83 at 7. The Court's opinion resolving that motion held that General Condition 2 of the insurance policy is "unambiguous" and that "Lockheed's claim against National Casualty is a claim 'within the scope of this policy.'" Doc. No. 106 at 8. When the Parties requested reconsideration and clarification of the Court's ruling on this and other matters, the Court summarized its initial ruling in the following way: "the Court held that General Condition 2 . . . *covers Lockheed Martin's attorneys' fees* and administrative expenses associated with its first-party property damage against National Casualty." Doc. No. 118 at 4 (emphasis added).

Nonetheless, upon reviewing these opinions and the filings previously submitted by the Parties in connection with their respective motions for summary judgment, the Court acknowledges that the issue is a complex and difficult one. The Court is not aware of any reported cases that interpret language similar to General Condition 2(a) in the context of a policy

that combines third-party liability coverage and first-party property insurance. The dearth of directly applicable case law and the uniqueness of the clause at issue make the issue a challenging one. The Court is committed to reaching the correct result on this important matter and is open to the possibility of hearing the Parties' arguments for and against reconsideration during the trial (at the directed-verdict stage) and/or after (at the J.N.O.V. stage). It is not yet the appropriate time for reconsideration, however, as neither Party has requested reconsideration or briefed the relevant issues. Thus, NCC's motion will be denied.

F. **Motion *in limine* to preclude Plaintiff from offering deposition designations of Geoff Wilkie, Doc. No. 147**

The Court denied this motion for the reasons stated at the hearing.

G. **Motion *in limine* to preclude Plaintiff from offering any expert opinion or testimony of Frederick "Kip" Hamilton, Doc. No. 148**

The Court granted this motion for the reasons stated at the hearing: Hamilton's report is largely duplicative of Albert Bowers's report, and his area of expertise does not relate to the issues that Lockheed intends to challenge. However, the Court left open the possibility of revisiting the issue if Lockheed changes course and challenges Bowers's business / accounting credentials.

H. **Motion *in limine* to preclude Plaintiff from offering any expert opinion or testimony regarding due diligence and to otherwise limit expert opinion and testimony, Doc. No. 149**

During the hearing, the Court granted the motion in part, denied it in part, and reserved judgment on several other issues. First of all, the Court indicated that the two experts at issue—Kenneth Draper and Bowers—may testify to matters that lie within their respective areas of expertise, but not otherwise. Draper is an expert in marine insurance, but not in naval engineering, whereas Bowers is an expert in naval engineering, but not in the interpretation of insurance language. The Parties requested further guidance from the Court regarding the boundaries of the two areas of expertise under the circumstances presented in this case.

The difficulty is that the ultimate issue presented by NCC's due diligence defense—whether Lockheed's decision to send the SLICE on the Hawaii-Alaska voyage constitutes a lack of due diligence within the meaning of the insurance policy—implicates both areas of expertise in arguably overlapping ways. The jury must be able to grasp the general meaning of the phrase "due diligence," but it will also need to hear technical testimony and concrete facts to determine whether Lockheed's decisions regarding the SLICE were diligent. NCC argues that due to the relevance of both areas of expertise and the close interplay between them, Draper and Bowers should both be able to testify as to the meaning of due diligence within the insurance policy and whether Lockheed exercised due diligence.

The Court disagrees and provides the following guidance. Draper, as an expert in the interpretation of marine insurance policies, may testify about the general meaning of due diligence and other language found in the insurance contract. However, he may not testify as to whether Lockheed exercised due diligence within the meaning of the policy. He simply lacks background in the technical disciplines that would be necessary to evaluate the diligence of Lockheed's preparations for the SLICE voyage. Thus, he may interpret the policy language, but he cannot apply his interpretation to the facts of this case.

By contrast, Bowers may offer his opinion on whether Lockheed diligently adhered to sound naval engineering principles. That subject lies within his expertise. However, he may not discuss the provisions of the insurance policy or frame his opinion regarding Lockheed's lack of diligence in terms of the policy. In other words, he may express his opinion that Lockheed did not act diligently, but he may not tell the jury that Lockheed acted without due diligence *within the meaning of the insurance policy*. It will be up to Counsel and the jury to draw connections between Bowers's testimony about Lockheed's alleged non-diligence and Draper's testimony about the general meaning of due diligence within the insurance policy.

The next contention presented by Lockheed's motion is that NCC is estopped from attributing more costs to the tug accidents than the $259,000 figure provided in the settlement between Lockheed and the tug company. Thus, Lockheed argues that the portions of Bowers's report that render higher estimates are inadmissible. During the hearing, Plaintiff seemed to agree with this point and indicated that it will redact the portions of Bowers's report that attribute additional costs to the tug accidents. The Court approved this way of proceeding and indicated that Plaintiff must redact the report.

Finally, Lockheed argues that several statements that Bowers relied on in rendering his opinion are inadmissible hearsay. Under Rule 703 of the Federal Rules of Evidence, experts may rely on hearsay, but only if the "facts or data were of a type reasonably relied on by other experts in the field." *Perry v. Scruggs*, 17 Fed. Appx. 81, 2001 WL 929873 at *3 (4th Cir. Aug. 16, 2001). The Court will address each set of challenged statements in turn.

First, Lockheed challenges statements by Dr. Paul Rispin, program manager for the United States Navy Office of Naval Research ("ONR") regarding the structure of the SLICE. Bowers cited an e-mail by a Lockheed employee relaying a conversation he had with Dr. Rispin

concerning how to get the SLICE to California after the accident occurred; according to the employee, Dr. Rispin said that the SLICE "was never intended to make a transoceanic transit." Doc. No. 149, Ex. A at 2-3, ¶ 4. Lockheed argues that we know nothing about Dr. Rispin's qualifications or knowledge of the SLICE and therefore have no basis for concluding that his statements are "facts or data . . . of a type reasonably relied on by other experts." Fed. R. Evid. 703.

The Court disagrees. The ONR is a highly specialized naval organization that funded the construction of the SLICE and even the particular voyage at issue. Thus, the Court holds that Bowers reasonably relied on the statements by Dr. Rispin.

Second, Lockheed objects to Bowers's reliance on an ONR document that comments on the structure of the SLICE. Again, the Court views the ONR as an expert organization on the issues pertinent to this case.

Third, Lockheed argues that Bowers impermissibly relied on statements by Stephen Loui, the president of Pacific Marine and Navatek, Ltd. ("Navatek"). Lockheed contends that we know nothing about his qualifications, and also that his statements were made after the accident occurred, not before. However, Navatek is the company that built the SLICE, upgraded it before the voyage, and repaired it after it was damaged. The president of the company that created, modified, and repaired the SLICE is likely to be uniquely well-informed regarding the engineering issues relevant to this case. Thus, the Court holds that Loui's statements are of the type that an expert in the field would reasonably rely upon.

Fourth, Lockheed objects to Bowers's reliance on a thesis prepared by Donald Lesh six years before the accident. The thesis is a motion study performed by the Naval Postgraduate School in Monterey, California. Graduate-level papers often make important contributions to

scholarship, and experts in many disciplines routinely rely on them. Thus, the jury may hear about how Bowers made use of the thesis in order to determine whether his testimony has foundation.

Finally, Lockheed argues that Bowers's references to a Weather Routing, Inc. ("WRI") report must be excluded, because he has no specialized knowledge of any weather-related science and therefore cannot formulate an independent judgment as to the reliability of the study. The Court agrees that Bowers does not possess weather-related expertise, and it is important that the jury not take his reliance on the WRI report as an indication that WRI is an authoritative weather source. However, it is impossible for the jury to understand his ultimate conclusion that it was dangerous to send the SLICE out to sea without learning of his assumptions regarding the weather. Thus, he may testify as to what he believed the weather forecast was for the day in question, and whether it was diligent to proceed on the voyage in the face of that forecast.

If it seems necessary during the trial, the Court will instruct the jury to weigh for itself, based on evidence from other witnesses and documents, what the weather forecast was on the day in question. The jury can be reminded that Bowers's testimony is only offered for the purpose of showing why the voyage might be dangerous *if* Bowers's weather-related assumptions are true, but that Bowers is not competent to opine on what the weather forecast was or should have been.

For these reasons, Lockheed's motion is granted in part and denied in part.


III.    **CONCLUSION**

The Court appreciates the excellence and professionalism which Counsel for the Parties have exhibited in connection with the briefing and articulation of the pertinent issues presented

to the Court for resolution during the past several years. As we prepare for the commencement of the trial, the Court requests that Counsel, as as officers of the Court, work together to implement any agreed upon redactions, to conserve time by anticipating and making, where possible and on a daily basis, any objections to expected testimony and witnesses prior to the jury being brought in, and to present the evidence in an orderly fashion so that the Court and jury follow the evidence.

A separate Order will follow summarizing the rulings on each motion.


    January 10, 2011                                            /s/
        Date                                          Alexander Williams, Jr.
                                                      United States District Judge