IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|                              |   |                             |
|------------------------------|---|-----------------------------|
| NATIONAL CASUALTY COMPANY,   | * |                             |
| Plaintiff,                   | * |                             |
| v.                           | * | Civil Action No. AW-05-1992 |
| LOCKHEED MARTIN CORPORATION, | * |                             |
| Defendant.                   | * |                             |

**<u>Memorandum Opinion</u>**

One of the central legal questions in this case is the proper standard for assessing "want of due diligence" within the meaning of the Liner Negligence Clause ("LNC") of the insurance policy. Lockheed Martin has taken exception to several of the Court's final jury instructions, in particular the instruction defining want of due diligence.[1] In addition to the reasons set forth on the record, the Court provides the following additional reasons to support its instruction to the jury on the meaning of due diligence.[2]

---

[1] The full text of the instruction read to the jury is the following:

> The insurance policy in this case contains what is called a Liner Negligence Clause. The Clause provides insurance coverage for damage resulting from a number of causes, including the "[n]egligence, error of judgment or incompetence of any person" or "any latent defect in the machinery or hull." Lockheed Martin has the burden of proving that the damage to the SEA SLICE is covered by the Liner Negligence Clause.
>
> If Lockheed Martin satisfies this burden, you must then consider National Casualty's due diligence defense. National Casualty bears the burden of showing that the damage to the SEA SLICE "resulted from want of due diligence" by "the Owner(s) or Manager(s) of the Vessel." The phrase "want of due diligence" refers to negligence on the part of the Owner or Manager(s). You must ask yourselves whether Lockheed or its Managers exercised the care expected of a reasonably prudent Owner or Manager.
>
> The "[master], mates, engineers, pilots or crew" are "not to be considered" the Owner or Managers of the ship. Damage resulting from the negligence of any of these persons is covered by the Liner Negligence Clause; the due diligence defense only applies to negligence by persons you determine to be the Owner or Managers of the SEA SLICE.

[2] By the time this opinion was issued, the jury had already returned a verdict in favor of Lockheed Martin. Nonetheless, because Lockheed Martin took exception to the Court's instruction on due diligence, and because the

The LNC initially provides for broad coverage that includes, among other things, the "[n]egligence, error of judgment or incompetence of any person." However, the LNC concludes with a proviso limiting the previously mentioned coverage with the following language: "Provided such loss or damage . . . has not resulted from *want of due diligence by the Assured(s), the Owner(s) or Manager(s) of the Vessel*, or any of them. Master, mates, engineers, pilots or crew not to be considered as part owners within the meaning of this clause should they hold shares in the Vessel." Insurance Policy at 14 (emphasis added). The Court instructed the jury that the phrase "want of due diligence" means negligence, and Lockheed objects that more is required.

As an initial matter, the plain meaning of the phrase "want of due diligence" implies the absence of reasonable care and ordinary prudence, which are central to the concept of negligence. "Diligence" means "[c]are; caution; the attention and care required from a person in a given situation." BLACK'S LAW DICTIONARY 468 (7th ed. 1999). More specifically, "due diligence" is "[the] diligence *reasonably expected from, and ordinarily exercised by*, a person who seeks to satisfy a legal requirement or to discharge an obligation." *Id.* (emphasis added). In light of the plain meaning of due diligence, it is no surprise that courts across the nation, including the Fourth Circuit, routinely use the terms negligence and lack of due diligence interchangeably in a wide range of different legal contexts. *See, e.g.*, *Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 124 F.3d 47, 50 (1st Cir. 1997) ("Puerto Rico law defines negligence as the failure to exercise due diligence to avoid foreseeable risks."); *Oriente Commercial, Inc. v. Am. Flag Vessel, M/V Floridian*, 529 F.2d 221, 223 (4th Cir. 1975) ("The cargo claimants having taken judgment on their allegations of negligence, have established a violation of the duty of due

---

meaning of due diligence is one of the most important legal issues that arose during this litigation, it is important for the Court to explain the basis for its instruction.

diligence . . . ."); *United States v. Mendoza*, 530 F.3d 758, 764-65 (9th Cir. 2008) ("[T]he government did not exercise due diligence. Instead, the government was negligent . . . ."); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1289 (11th Cir. 2007) ("To establish reasonable reliance under Georgia law as to either fraud or negligent misrepresentation, a plaintiff must show that it exercised due diligence.").

However, the Court need not venture into external areas of law to find references equating want of due diligence with negligence. Numerous jurisdictions have treated the concepts of negligence and lack of due diligence as identical in the course of interpreting marine insurance provisions similar to the LNC. In fact, many of the reported decisions dealing with such clauses assume or determine that a particular person was negligent, and then focus on the question of whether that negligent person was a "master" of the vessel (whose negligence is covered by the Clause) or an owner or manager (whose lack of due diligence voids coverage). *See, e.g.*, *Allen N. Spooner & Son, Inc. v. Conn. Fire Ins. Co.*, 314 F.2d 753, 757-58 (2d Cir. 1963); *Founders' Ins. Co. v. Rogers*, 281 F.2d 332, 338 (9th Cir. 1960).

Furthermore, the Eighth Circuit has explicitly held, in a thorough opinion that this Court finds persuasive, that it is proper to instruct the jury that lack of due diligence means negligence in the context of marine insurance clauses similar to the LNC. *See L & L Marine Serv., Inc. v. Ins. Co. of N. Am.*, 796 F.2d 1032, 1033 (8th Cir. 1986). The opinion is substantially based on a Supreme Court decision holding that "[a] defect of seaworthiness, arising after the commencement of the risk, and permitted to continue from bad faith *or want of ordinary prudence or diligence on the part of the insured or his agents*, discharges the insurer from liability for any loss which is the consequence of such bad faith, or *want of prudence or diligence*." *Union Ins. Co. v. Smith*, 124 U.S. 405, 427 (1888) (emphasis added).

Lockheed objects to the Court's jury instruction on several grounds. First, Lockheed contends that "want of due diligence" is properly limited to situations where "the vessel has been *flagrantly mismanaged* to such an extent as to render the vessel *grossly unseaworthy*." LESLIE J. BUGLASS, MARINE INSURANCE AND GENERAL AVERAGE IN THE UNITED STATES 150-51 (3d ed. 1991) (emphasis added). However, neither Buglass nor Lockheed presents any case law in support of this position. Ordinarily, Buglass cites extensively to precedent in support of her restatements of the law, but the crucial paragraph cited by Lockheed is bereft of any legal foundation. Given that Buglass's recitation of the law is not grounded in precedent, and given that the Court has identified case law that equates lack of due diligence with simple negligence, *see supra*, the Court declines Lockheed's invitation to follow Buglass's approach.

Second, Lockheed contends, based on a decision of the Fifth Circuit, that the due diligence proviso is only triggered when the insured, "from bad faith or neglect, knowingly permit[s] the vessel to break ground in an unseaworthy condition," or, put differently, when the owner has "privity and knowledge" of the vessel's unseaworthiness. *Saskatchewan Gov't Ins. Office v. Spot Pack, Inc.*, 242 F.2d 385, 388, 392 (5th Cir. 1957). Based on *Spot Pack*, Lockheed argues that want of due diligence requires actual knowledge.

The *Spot Pack* decision contains some infelicitous and overly broad wording that makes it susceptible to the interpretation suggested by Lockheed, but the best reading of *Spot Pack* is consistent with the jury instruction issued in this case. To begin with, *Spot Pack* acknowledges and accepts the holding of *Union Insurance Company*, *i.e.*, that "[a] defect of seaworthiness, arising after the commencement of the risk, and permitted to continue from bad faith or want of ordinary prudence or diligence on the part of the insured or his agents, discharges the insurer

from liability for any loss which is the consequence of such bad faith, or want of prudence or diligence." 124 U.S. at 427; *see* 242 F.2d at 389.

*Spot Pack* does limit the *Union Insurance Company* holding to "those acts in which the owner, if an individual, personally participates, or if a corporation or multiple ownership, in which there is *personal participation by those having shoreside managerial responsibilities*," 242 F.2d at 389 (emphasis added), but this limitation does not completely nullify the "want of ordinary prudence or diligence" language from *Union Insurance Company*. 124 U.S. at 427. Instead, the holding in *Spot Pack* centers on a distinction it draws between "acts of those in supervisory management," on the one hand, and "neglect by agents or servants below the level of management," on the other. 242 F.2d at 390. Because lack of due diligence "will not be imputed [from agent to owner] on the usual notions of *respondeat superior*," the negligent acts of "agents or servants below the level of management" generally do not establish a lack of due diligence on the part of the owner or manager (except where the owner or manager has "actual knowledge" of the negligent acts). *Id.* By contrast, the *Union Insurance Company* "ordinary prudence or diligence" standard, 124 U.S. at 427, applies to persons with "shoreside managerial responsibilities" (*i.e.*, owners or managers) when they personally take actions to prepare a vessel for a voyage. 242 F.2d at 389.

The jury instruction issued by this Court incorporates the distinction and prevents the jury from finding lack of due diligence by mistakenly applying *respondeat superior* principles. In relevant part, the instruction provides that "[t]he '[master], mates, engineers, pilots or crew' are 'not to be considered' the Owner or Managers of the ship. Damage resulting from the negligence of any of these persons is covered by the Liner Negligence Clause; the due diligence defense only applies to negligence by persons you determine to be the Owner or Managers of the SEA

SLICE." In accordance with *Spot Pack*, this Court instructed the jury not to confuse the negligent acts of low-level ship masters and other employees (whose negligent acts are covered by the LNC) with the negligence of Lockheed's owners or managers (which is exempted by the due diligence proviso).

Lockheed also relies on *Goodman v. Fireman's Fund Insurance Company*, 600 F.2d 1040 (4th Cir. 1979) in support of its argument that simple negligence is inadequate to establish lack of due diligence. In *Goodman*, the Fourth Circuit was confronted with an insurance policy with an Inchmaree Clause, which is closely related to the LNC at issue in this case. The court found that the predominant cause of vessel damage was the negligence of the plaintiff / insured, yet it nonetheless concluded that, if the Inchmaree Clause "were considered alone," the court "would find coverage." *Id.* at 1042. Lockheed contends that the Fourth Circuit necessarily (albeit implicitly) held that the negligence of the plaintiff / owner is not sufficient to trigger the due diligence proviso and strip coverage under the Inchmaree Clause.

The Court disagrees with Lockheed's reading of *Goodman*. Even though the underlying district court opinion in *Goodman* discussed the due diligence proviso to the Inchmaree Clause (and appears to have based its decision on lack of due diligence), *see* 452 F.Supp. 8, 10-11 (D. Md. 1977), the Fourth Circuit never even mentioned the phrase "due diligence" in its analysis of the Clause, *see* 600 F.2d at 1042. It seems that the Fourth Circuit focused its analysis exclusively on determining what types of risks are covered by the Inchmaree Clause and never considered the issue of due diligence. This Court is unwilling to read between the lines of a poorly reasoned and ambiguous opinion to discern the meaning of due diligence, when many other cases have provided ample grounds for equating lack of due diligence with negligence. *See supra*.

Next, Lockheed argues that other language within the LNC suggests that negligence is not the appropriate standard for the due diligence proviso. Specifically, Lockheed points out that the LNC expressly covers the "[n]egligence . . . of any person," and that this language would effectively be modified to "[n]egligence . . . of any person except owners or managers" if the Court were to equate lack of due diligence with negligence. Although Lockheed is correct regarding the functional outcome of the Court's interpretation of the proviso, that outcome is not problematic. The purpose of a proviso clause is to restrict or clarify the scope of what came before. Thus, there is nothing incongruous in reading the LNC as initially providing broad coverage for the "[n]egligence . . . of any person" and subsequently clarifying that the negligence of certain categories of persons (*i.e.*, "the Assured(s), the Owner(s) or Manager(s) of the Vessel") constitutes an affirmative defense.

The Court recognizes that the jury instruction that it ultimately settled upon is in tension with the standard that it employed several years ago in deciding the Parties' respective motions for summary judgment on the due diligence issue. *See* Doc. Nos. 106, 118. However, it is the role of this Court to supply the jury with a complete and accurate statement of the applicable legal standards. Rather than replicate any ambiguous or erroneous statements of the law introduced earlier in this litigation, the Court has ensured that the jury is properly instructed and that the case will ultimately be closed with correct answers to the challenging legal questions that have arisen in the course of five years of litigation.

|  |  |
|---|---|
|   February 14, 2011   <br> Date |           /s/              <br> Alexander Williams, Jr. <br> United States District Judge |